Craig Borison, Esq. (SBN 248387)
BORISON LAW
468 North Camden Drive
Ste 200-90416
Beverly Hills, CA 90210
Telephone: (818) 256-5449
craig@borisonlaw.com

Attorneys for Nic Dahlquist individually,
and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| Nic Dahlquist, individually and on behalf of all others similarly situated, | Case No. 5:22-cv-402 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Samsung Electronics America, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff Nic Dahlquist ("Plaintiff"), by attorneys, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Samsung Electronics America, Inc. ("Defendant") manufactures, distributes, markets, labels, and sells the Galaxy Watch Active 2 smart watch (the "Product").

1

**CLASS ACTION COMPLAINT**

**FACTUAL ALLEGATIONS**

**I.    THE IMPORTANCE OF WATER RESISTANCE FEATURES**

2.    Consumers have been increasingly concerned about protecting their smart watches from water damage.

3.    For example, according to reports, the number of smart watches offering resistance against damage from water and other liquids has grown significantly since these devices were first introduced several years ago, while non-water-resistant smart watches have declined.

4.    Consumers demand water resistant features because there are significant repair and replacement costs when a non-water-resistant smart watch is damaged or destroyed.

5.    The costs are significant to users, who must repair or replace expensive smart watches, and to the environment, when a device is discarded.

6.    This "hidden tax" due to the inability to withstand even minimal contact and immersion in water costs American consumers over $10 billion each year.

7.    Accidental damage is estimated as responsible for 95% of smart watch failures.

8. Reports indicate that approximately one-third of all smart watch failures are due to liquid damage, such as accidental and temporary contact and/or immersion in water.

9. In 2016, the International Data Corporation ("IDC") found that contact with water was the second largest cause of damage to smart electronic devices in the world.

10. Aside from longer battery life and shatterproof screens, water resistance has become a key smart watch feature in demand by consumers.

11. Thus, water-resistant features allow electronic companies to increase revenues by obtaining a price premium and/or increased units sold.

12. Recognizing the importance of water-protective features, the International Electrotechnical Commission ("IEC") developed ingress protection ("IP") standards, part of the IEC Standard 60529:2013 ("IEC Standard").

13.

14. The IP code is the typical method to rate the ability of electrical equipment with a rated voltage not exceeding 72.5 kV to withstand water, as well as solid foreign objects, through the equipment's case openings and electrical enclosures.

15. This allows manufacturers of electronics, such as Defendant, to certify to purchasers that their devices are capable of varying levels of resistance to dust and water, i.e., IP68.

16. The first digit ("6") corresponds to dust protection and the second ("8") to water protection.

17. A product rated IP68 should provide water resistance to a depth of 4 meters for up to 30 minutes.

18. Although Samsung describes the Product as "water-resistant," its marketing suggests and implies it is "waterproof."

19. Moreover, most consumers do not distinguish between "waterproof" and "water-resistant."

20. A product is water-resistant if it can resist the penetration of water to some degree.

21. The term "waterproof" indicates that the enclosure of the device is completely

3

impervious to water.

22.     Since only hermetically sealed products may be truly waterproof, and to avoid disputes and ambiguities for watches, the term "waterproof" was replaced by the term "water-resistant" in the International Organization for Standardization ("ISO") 2281:1990 standard.

23.     Since then, only the term "water-resistant" has been used to describe electrical devices and the water resistance test standards set forth by the ISO and the International Electrotechnical Commission ("IEC").

24.     The replacement of the term "waterproof" with the term "water-resistant" by the ISO and IEC, however, has not changed the reasonable consumers' belief that the terms are synonymous.

25.     Defendant takes advantage of reasonable consumers' inability to distinguish between the two terms through marketing practices that superimpose the term "water-resistant" against a backdrop of visuals and statements that imply the Product is waterproof.

26.     Defendant attempts to substantiate its "water-resistance" claims, and disclaim any perceived "waterproof" claim, by referencing an IEC Standard that was not intended to be applied to the Product, and which does not provide information relevant to the real-world use of the Product by consumers.

## II.     DEFENDANT PROMOTES THE WATER-RESISTANT FEATURES OF THE PRODUCT

27.     Defendant's advertising and marketing of the Product emphasizes its water resistance.

28.     Defendant displays the Product as being splashed with water, stating it can "Keep[s] up where you go," because of its "IP68 and 5ATM water and dust rating plus military grade durability [allow it] to handle a range of conditions."

**CLASS ACTION COMPLAINT**



**Keeps up where you go**

Take your watch along on the road less traveled. Galaxy Watch Active2 goes where you go with an IP68 and 5ATM water and dust rating plus military grade durability to handle a range of conditions, so you can keep it on to go farther and experience more. [33, 34]

29.     IP68 means a Product will be water-resistant to a depth of 4 meters for up to 30 minutes.

30.     The marketing and advertising emphasize the Product as able to measure the physical activity expended in swimming.

31.     The press release announcing the Product described it as "The Perfect Companion for Your Wellness Goals," in part because it can be used to measure various types of exercise:

> [W]ith seven of them automatically activated – including running, walking, cycling, swimming, rowing machine, elliptical machine and dynamic workouts.

**The Perfect Companion for Your Wellness Goals**

The Galaxy Watch Active2 also serves as your guide to improved health and wellness, providing actionable insights that can help you make positive lifestyle choices in your diet, exercise, mental health, sleep and more.

With exercise, for example, the smartwatch can manually track more than 39 workouts with seven of them automatically activated—including running, walking, cycling, swimming, rowing machine, elliptical machine and dynamic workouts. With an updated Running Coach, you can monitor your running pace in real-time and enjoy seven different running programs to help meet your goals. The Galaxy Watch Active2 even incorporates innovative new health sensors on the back, which take in readings faster, so you know you're getting insights quickly to maximize your fitness routine and stay on track.

32.     Elsewhere on Defendant's website, it describes the Product as delivering "Better insights to reach your fitness goals," because "[I]t automatically tracks seven popular activities:

walking, running, cycling, rowing, elliptical trainer, dynamic workouts and swimming."



33.    Potential purchasers are encouraged to "Track your workout on your wrist," so "you can just slip it on and get working out," as "swimming [was] added to automatic tracking."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

# Track your workout on your wrist

Galaxy Watch Active2 tracks your movements so you can just slip it on and get working out. With swimming added to automatic tracking you now get seven exercises, while manual tracking works for all activities for dozens you can track. Running coach function gives you actionable advice in real time. [5,4]





18      34.    The marketing describes the Product as integrating with "Apps to push you

19   further," when engaging in various physical activities, such as swimming, based on its integration

20   with the Swim.com app.

21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



35.     Beyond use in measuring physical activity in water, the marketing shows the Product can sustain more mundane day-to-day contact with water, even providing "A friendly reminder to wash your hands," and "detect[ing] when you're washing your hands and giv[ing] you a handy countdown to make sure you do a great job," over a picture of handwashing.



8

36.     Defendant told Plaintiff and consumers that "No matter what nature throws at you – whether it's rain or puddles –  your watch will be perfectly fine. That's because many Samsung smart watches and fitness bands are water resistant. In other words, you can keep track of your workout when it's raining, or even underwater!"



## III.   THE PRODUCT FAILS TO MEET THE PROMISED WATER-RESISTANT ABILITIES

37.     Despite offering a swim-tracking mode, using images of the device being used in water, recommending the use of swimming apps, and using marketing language like "Your smart watch is always ready for a dip," the Product is not water-resistant as understood by Plaintiff and consumers, and routinely fails in brief encounters with water.

### A.     IEC STANDARD AND TESTING ARE NOT APPLICABLE TO PRODUCT

38.     The IEC Standard provides general experimental requirements.

39.     The IEC Standard is not intended for smart watches, does not apply to real world use conditions of smart watches, and is not understood by most consumers, including Plaintiff.

40.     First, the IEC Standard requires that a sample device be brand new before being tested, a condition that will almost never be met in the real world.

41.     In real-world conditions, the user will not have their smart watch subjected to potential water damage immediately after they open it.

42.     In real-world conditions, the Product will not be immersed in purified, fresh water.

43.     Over time, a smart watch will come into contact with bodily oils, cosmetics, suntan lotions, and water, which all contain corrosive agents.

44.     This causes gradual corrosion and wearing out of parts, seals, conformal coatings, foams, and adhesives, causing the permeability of the device to degrade over time.

45.     Second, the Product's water protection barriers, such as coatings, glues, gaskets, meshes, and membranes are porous, and only "deter" water from entering.

46.     These barriers degrade and fail, especially when the Product is subjected to various temperatures, pressures, and mechanical force conditions.

47.     Water entering the smart watch may still contact the junction of some wires, causing new circuit paths, resulting in leakage currents or short circuits.

48.     Third, the general requirements for IP tests are within temperatures from 59°F to 95°F, relative humidity from 20% to 75%, and air pressure between 86 KPa to 106 KPa.

49.     However, the temperature in pools, sinks, and bathtubs typically exceeds the suggested temperature range under the IEC Standard, which impacts the efficacy of the Product's physical sealing.

50.     In real-world usage, consumers expect water-resistance translates to the device being moisture proof, i.e., carried inside a backpack or purse, used to play music in a hot shower, and moved rapidly between a cold indoor office to a hot and humid environment without sustaining damage.

51.     Fourth, the IEC Standard does not specify whether a sample is energized when tested, yet whether a smart watch is on when submerged will affect its ability to resist water.

52.     If the smart watch is on and running various programs, the internal temperature and pressure will be elevated, and the electrical bias can accelerate electromigration.

53.     These factors may affect the depth and duration of water contact the smart watch can withstand.

54.     Fifth, the IEC Standard does not describe how water enters the device, yet that process will affect the pressure it is subjected to, which impacts the depth and time it can

1    withstand immersion.

2    55.    In real life, a smart watch may accidentally fall quickly to the bottom of water, i.e.,

3    a toilet, sink, or shallow pool, which affects the pressure and water ingression rate.

4    56.    Sixth, the acceptance criteria for the water resistance tests are vague, requiring only

5    that water entering a device not affect its normal operation or impair its safety.

6    57.    For example, one lab may rate a smart watch as "water-resistant" as long as a short

7    circuit does not occur, and yet accept the fact that there was a reduction of acoustic performance.

8    58.    When consumers buy a smart watch billed as water-resistant, they expect it will be

9    reliable in most situations that involve water, including but not limited to washing dishes,

10    exercising, and various forms of accidental "dunks" in a sink, toilet, or pool.

11    59.    Nevertheless, the user manual and official websites for the Product, notes generally

12    in a small, inconspicuous font at the bottom of the advertisement or representation that it is not or

13    may not be water resistant.

14    60.    However, such statements are inconsistent with the Product's water resistance

15    marketing campaigns, which state it is water resistant at IP68 and depict the Product being

16    splashed in water or used in swimming.

17    61.    Moreover, Plaintiffs and the Class Members are not presented with these

18    statements, and are not otherwise told this information, prior to purchasing the Product, but rather

19    only learn this information after it begins malfunctioning, or ceases to function entirely, as a result

20    of liquid damage.

21    62.    A study supported by the National Key Research and Development Program of

22    China and the Center for Advanced Life Cycle Engineering, University of Maryland at College

23    Park, concluded that manufacturers, such as Defendant, regularly make false and deceptive

24    representations with respect to the water-resistant properties of their devices.

25    **B.    THE PRODUCT IS NOT WATER-RESISTANT AS ADVERTISED**

26    63.    The number "8" in IP68 signifies that the Product enclosure has liquid ingress

27    protection against long term immersion in water over 1 meter deep for a period of at least 30

28    minutes.

64.   However, the Product suffers frequent damaged after being dropped into, or contacted with, water or other liquids, for a few minutes or even seconds.

65.   However, Defendant refuses to repair or replace liquid-damaged Products under its warranty.

66.   Defendant's representations with regard to the water resistance capabilities of the Product are materially false because they do not perform as advertised under normal, real-world conditions and use.

67.   The commercials, presentations, and website statements are only a few examples of the advertisements Defendant created and distributed representing that the Product will not sustain any damage if submerged in, or contacted with, water, or other common liquids.

68.   Defendant's advertisements mislead consumers by creating the reasonable but false belief that if the Product gets wet or submerged in water or other common liquids, in real-life, non-laboratory conditions, it will not sustain any damage.

69.   However, the internet is full of complaints pertaining to the Product's inability to withstand water as advertised.

70.   In September 2020, one user shared his frustrations with the Product, beginning with how Defendant represented it to him:

> The Samsung – Galaxy Watch Active2 Smartwatch claims to be water-resistant: "Water-resistant up to 50 meters per ISO standard 22810:2010. Not intended for scuba diving. Avoid excessive, sudden temperature changes, and high-velocity activities. Rinse in freshwater/dry after use in seawater or chlorinated water."

71.   Then, this purchaser described his experience with the Product:

> I purchased the watch May 2020, stood in a 3ft pool (not even swimming), unchlorinated (salt water), for 30 minutes, shook watch off (in "swim mode"). 2 days later the watch is unresponsive to touch. Sent in the product because it's less than a year and under manufacturer warranty. I received a repair bill of $219.79 for water damage. The value of the watch BRAND new is $229.

I purchased the watch May 2020, stood in a 3ft pool (not even swimming), unchlorinated (salt water), for 30 minutes, shook watch off (in "swim mode"). 2 days later the watch is unresponsive to touch. Sent in the product because it's less than a year and under manufacturer warranty. I received a repair bill of $219.79 for water damage. The value of the watch BRAND new is $229.

72.     This poster stated that he experienced difficulty in contacting customer support, as he was "hung up on THREE times but also blamed for water damage on a water-resistant watch that is supposed to be for swimming, under the conditions stated."

73.     Numerous purchasers of the Product shared that their experiences were very similar.

74.     Shamatee Mitchell echoed this experience, stating:

> Same! I used very lightly for swimming. Shallow end, was mainly above water holding my toddler daughter. Dried as instructed, screen went black and would no longer work. It was connected to my phone and receiving notifications, but other than that, did NOT work!

**SHAMATEE MITCHELL**                                                    ↑ Reply
July 2, 2021 at 6:40 pm

---

Same! I used very lightly for swimming. Shallow end, was mainly above water holding my toddler daughter. Dried as instructed, screen went black and would no longer work. It was connected to my phone and receiving notifications, but other than that, did NOT work!

75.     A user identified as "Janine" stated:

> My active 2 was great until three freestyle strokes into my first swim with it.
>
> Black screen ever since. !!??
>
> + PROS: great when not near water
>
> - CONS: is supposed to be for swimming and it didn't work after a light swim in fresh water.

**JANINE**
April 8, 2021 at 10:48 am

---

My active 2 was great until three freestyle strokes into my first swim with it.
Black screen ever since. !!??

**+ PROS:**
✓ great when not near water

**- CONS:**
— is supposed to be for swimming and it didn't work after a light swim in fresh water.

76.     A user identified as "Lori" stated:

Literally the same thing just happened to me (including getting hung up on!). I had the watch all of 4 months and the most water it saw was at my sink.

I could tell the whole long story but I believe we all have the same experience. I'm fairly certain they make customer service send people in circles so they give up.

I ultimately did give up. It's absolutely infuriating and this is a class action lawsuit waiting to happen.


**LORI**                                                                                 ↑ Reply
November 17, 2021 at 3:45 am

Literally the same thing just happened to me (including getting hung up on!). I had the watch all of 4 months and the most water it saw was at my sink. I could tell the whole long story but I believe we all have the same experience. I'm fairly certain they make customer service send people in circles so they give up. I ultimately did give up. It's absolutely infuriating and this is a class action lawsuit waiting to happen.

77.     A purchaser identified as Theodor Martinescu stated:

Same thing happened to my daughter. Owned the Active 2 for 6 months, went swimming and the first time it is submerged it stopped working. If there is a class action suit, count me in.


**THEODOR MARTINESCU**                                                     ↑ Reply
October 31, 2021 at 10:54 pm

Same thing happened to my daughter. Owned the Active 2 for 6 months, went swimming and the first time it is submerged it stopped working. If there is a class action suit, count me in.

78.     Valerie Paquette described the:

The same exact thing! Had the watch for three months with occasional swimming over the summer. I was very careful at first to not swim with it but husband kept reminding me it is water proof and even has a swim mode…well turns out – not water resistant!! Screen went black, sent it in under warranty only to get a call that it is water damage and not covered $200+ to fix it. Customer service refused to bend even after asking about the fact they the claim this watch is water resistant. We are all in the same boat here.


**VALERIE PAQUETTE**                                                         ↑ Reply
October 29, 2021 at 2:08 am

The same exact thing! Had the watch for three months with occasional swimming over the summer. I was very careful at first to not swim with it but husband kept reminding me it is water proof and even has a swim mode…well turns out – not water resistant!! Screen went black, sent it in under warranty only to get a call that it is water damage and not covered $200+ to fix it. Customer service refused to bend even after asking about the fact they the claim this watch is water resistant. We are all in the same boat here.

79.     A user going by the name, "Very Disappointed in Samsung," stated:

---

14

**CLASS ACTION COMPLAINT**

1
2
3

Swam in my Active Watch three or four times with the water lock on. After my last swim, my display started showing lines and fadding in and out. Then, no display at all. I made a warranty claim with Samsung and sent it to them according to their instructions.

4
5

I got a bill for over $180 because water damage is not covered under their warranty. My watch was less than a year old.

6
7

They said I had broken the water seal. How could I do that in my mild over-hand swimming strokes and life work in front of a computer all day.

8

I love my watch and ended up buying another, but I don't take it in the water.

9
10

 **VERY DISAPPOINTED IN SAMSUNG**                              ↑ Reply
February 8, 2022 at 8:40 am

11
12
13

Swam in my Active Watch three or four times with the water lock on. After my last swim, my display started showing lines and fadding in and out. Then, no display at all. I made a warranty claim with Samsung and sent it to them according to their instructions. I got a bill for over $180 because water damage is not covered under their warranty. My watch was less than a year old. They said I had broken the water seal. How could I do that in my mild over-hand swimming strokes and life work in front of a computer all day. I love my watch and ended up buying another, but I don't take it in the water.

14

80.    A user identified as "Harita" had a similar experience:

15
16

Agree. Not waterproof. Watch became useless after 1st swim. When sent to customer service, they took couple of months and said it is not covered under warranty…

17

+ PROS: None

18

- CONS: - Not waterproof as mentioned - No warranty provided for water damage.

19
20

 **HARITA**
July 21, 2021 at 10:44 am

21

Agree. Not waterproof. Watch became useless after 1st swim. When sent to customer service, they took couple of months and said it is not covered under warranty…

22

**+ PROS:**
✓ None

23
24

**- CONS:**
— - Not waterproof as mentioned
— - No warranty provided for water damage.

25
26

81.    A Verified Purchaser of the Product, going by "Steve," offered one of the most highly rated reviews of the Product:

27

If you plan to get it wet... don't purchase this watch[e]

28

The watch states water resistant to 5ATM and safe for pools and salt water. I

15

decided to check out the swim function.

Put the watch into water safe mode and double checked that the water drop showed on the display. Got into the pool and took 2 arm strokes then noticed the display was flashing. "Samsung Galaxy watch resetting". I took the watch off and dried it. The flashing continued so I left it in the towel for 2 hours. When I picked it up the display was black.

When I got home I put it on a charger. It charged to 100%. When removed from the charger the flashing continued for 30 minutes then stopped.

I researched the water resistant problems and found many who have had the same thing happen when attempting to use the Galaxy active 2 for a swim workout. It seems that this is a common complaint. The Watch IS NOT water resistant as stated in the docum[en]tation.

Samsung was called and they talked me through several things I'd already tried. I got a shipping label to return for repair.... according to them the watch had gotten wet!

Add to that the warranty is invalidated if you get the watch wet! Then the repair costs over $220 if done by Samsung. A new watch costs between $199 and $279 depending on where it's purchased and ongoing sales.

The Samsung service was no help. I was sent from one person/department to another and the conversation went in circles. You got it wet/I followed the instructions for water safe/ but you put it in water, it states the watch can be worn in pool for swimming, but you got it wet and that invalidated the warranty, but it says I can swim with it to track a workout, you got it wet..... I got the sense that each person was reading from the same scripted response card.

In short the watch should not get wet. It is not water resistant. And costs as much to repair as a new watch.

**CLASS ACTION COMPLAINT**

Steve

⭐☆☆☆☆ **If you plan to get it wet... don't purchase this watche**

Reviewed in the United States on June 9, 2020

Color: Silver | Size: 40 mm | Style: Bluetooth | Pattern Name: Smart Watch | **Verified Purchase**

The watch states water resistant to 5ATM and safe for pools and salt water. I decided to check out the swim function.

Put the watch into water safe mode and double checked that the water drop showed on the display. Got into the pool and took 2 arm strokes then noticed the display was flashing. "Samsung Galaxy watch resetting". I took the watch off and dried it. The flashing continued so I left it in the towel for 2 hours. When I picked it up the display was black.

When I got home I put it on a charger. It charged to 100%. When removed from the charger the flashing continued for 30 minutes then stopped.

I researched the water resistant problems and found many who have had the same thing happen when attempting to use the Galaxy active 2 for a swim workout. It seems that this is a common complaint. The Watch IS NOT water resistant as stated in the documtation.

Samsung was called and they talked me through several things I'd already tried. I got a shipping label to return for repair.... according to them the watch had gotten wet!

Add to that the warranty is invalidated if you get the watch wet! Then the repair costs over $220 if done by Samsung. A new watch costs between $199 and $279 depending on where it's purchased and ongoing sales.

The Samsung service was no help. I was sent from one person/department to another and the conversation went in circles. You got it wet/I followed the instructions for water safe/ but you put it in water, it states the watch can be worn in pool for swimming, but you got it wet and that invalidated the warranty, but it says I can swim with it to track a workout, you got it wet..... I got the sense that each person was reading from the same scripted response card.

In short the watch should not get wet. It is not water resistant. And costs as much to repair as a new watch.

82.    Larry Daniel Maestas stated:

[I] had the same thing happen, and samsung will not stand behind the warranty. i contacted a lawyer and he said he would not touch it unless we got enough people with a case so i need to see how many people has this really happened to? if there are enough of us we can hold samsung accountable.

+ PROS: Great watch for 3 months.

- CONS: not water proof or resistant as stated, samsung not standing behind their product is unacceptable.

83.    Upon information and believe, Defendant has created internal indicators to detect whether the Product has been exposed to liquids, in order to deny customers their warranty repair and replacement requests.

84.    It is Defendant's policy to deny warranty repair or replacement when this indicator

17

**CLASS ACTION COMPLAINT**

is activated.

85.    This means buyers are told one thing when they buy the Product, based on the representations, but something else when they need after-sales service or replacement.

86.    Purchasers are typically told that the price of repair exceeds the price at which they purchased the Product new.

## IV.    RELIANCE AND ECONOMIC INJURY

87.    Plaintiff and other reasonable consumers purchased the Product believing its water resistant capabilities were accurately represented.

88.    Plaintiff and other reasonable consumers either (1) would not have purchased the Product if they had known about the misrepresentations and omissions, (2) would have purchased it on different terms, i.e., at a lower price, (3) purchased a different smart watch, (4) not purchased it at all, or (5) purchased it with diminished expectations about its water-resistant abilities.

89.    Plaintiff and Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

90.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and Class Members.

91.    In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that Plaintiff and Class Members would pay a premium for products represented as water resistant over comparable products not so marketed.

92.    Plaintiff and Class Members were deprived of the benefit of the bargain because they paid for a Product that was water resistant but received a Product that was not water resistant.

93.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and Class Members.

94.    The product Plaintiff and the Class Members received was worth less than the Product for which they paid.

95.    Based on Defendant's misleading and deceptive representations, Defendant was

able to, and did, charge a premium price for the Product over the cost of competitive products that are not represented as water resistant.

96.     Consequently, Plaintiff and the Class Members suffered injury-in-fact and lost money as a result of Defendant's wrongful conduct.

**INTRADISTRICT ASSIGNMENT**

97.     Pursuant to General Order No. 21-01, In the Matter of Assignment of Cases and Duties to District Judges, and Rule I.B.1.a.(1)(c) ("Non-Removed Cases Not Involving the United States"), this Action should be assigned to the Eastern Division.

98.     This assignment is because 50% or more of the plaintiffs in this action reside in this District and within the Eastern Division, in San Bernardino County, and the case is not assignable to the Southern Division pursuant to Rule I.B.1.a.(1)(c)(1).

**PARTIES**

99.     Plaintiff is a citizen of California, residing in San Bernardino County.

100.     In June 2021, Plaintiff purchased the Samsung Galaxy Watch Active2 from Amazon.com for no less than $172.00.

101.     At the time of his purchase, Plaintiff viewed and relied upon Defendant's representations that the Product was water resistant as described herein.

102.     Plaintiff viewed Defendant's representations that the Product could be used while swimming.

103.     In January 2022, Plaintiff swam in a pool with a maximum depth of 3 feet.

104.     Plaintiff's use of the device was consistent with its operating instructions and the representations regarding its expected water-resistant capabilities.

105.     Upon exiting the pool, the device became stuck in a reboot loop.

106.     Plaintiff promptly contacted Defendant, and despite following their instructions, the device did not regain function.

107.     Plaintiff then submitted the Product to Defendant for repair under the warranty.

108.     After inspecting the device, Defendant denied repair under the warranty, claiming

1   the device was damaged by water, and therefore not covered under the warranty.

2   109.   In lieu of repair under the warranty, Defendant demanded payment of $208.98 to

3   repair the device.

4   110.   The price quoted for the repair was greater than the price paid by Plaintiff, and the

5   $199.99 price the Product is typically sold at.

6   111.   Defendant is a New York corporation with its principal place of business in New

7   Jersey.

8   112.   Defendant is a global leader in the manufacture and sale of consumer electronics.

9   113.   Defendant's products include televisions, smart phones, refrigerators, microwaves,

10  and smart watches.

11  114.   Consumers place their trust in Defendant, because they use its products throughout

12  their house to perform essential functions, not only for entertainment.

13  115.   Defendant's reputation is built on consumer trust that its products will be reliable,

14  and function in the manner promised and advertised.

15  116.   Defendant capitalizes on this consumer trust when selling devices such as the

16  Product.

17  117.   Defendant produces, markets and distributes the Product through retail stores and

18  the internet, across the United States including stores physically located in the State of California

19  and in this district.

20  118.   Plaintiff would be willing to purchase the Product again if assured it was the most-

21  advanced and most water-resistant Samsung smart watch.

22  119.   Plaintiff is unable to rely not only on the representations of this Product, but other

23  electronic devices represented as water-resistant.

24  120.   Plaintiff is unable to rely on the water-resistant representations of other similar

25  products, and reluctant to utilize such products in accordance with how they are promoted, even

26  though he would like to, which causes him to not receive the full value of what he purchased.

27                          **JURISDICTION AND VENUE**

28  121.   Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28

20

**CLASS ACTION COMPLAINT**

1    U.S.C. § 1332(d)(2)(A).

2       122.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d) ("Class

3    Action Fairness Act" or "CAFA").

4       123.    The proposed class has at least 100 members, because the Product has been widely

5    sold within this State for several years.

6       124.    Plaintiff is a citizen of a State different from Defendant.

7       125.    Plaintiff alleges the amount-in-controversy of the claims of the proposed Class

8    exceed $5,000,000, exclusive of interest and costs.

9       126.    Venue is proper in this District under 28 U.S.C. § 1391(a).

10       127.    Plaintiff's purchases of the Product, substantial acts in furtherance of the alleged

11    improper conduct, including the dissemination of false and misleading information regarding the

12    nature, quality, features and/or attributes of the Product to Plaintiff, occurred within this District.

13       128.    This Court has personal jurisdiction over Defendant because it conducts and

14    transacts business, contracts to supply and supplies goods within California.

15

16                       **CLASS ACTION ALLEGATIONS**

17       129.    Plaintiff brings this proposed class action pursuant to Fed. R. Civ. P. Rule 23, on

18    behalf of himself, and all others similarly situated, defined below:

19         Class: All citizens of California who purchased the Product for personal or
           household use within the statutory period (the "Class").

20

21       130.    Excluded from the Class are: (a) Defendant, Defendant's board members, executive

22    -level officers, and attorneys, and immediately family members of any of the foregoing persons;

23    (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d)

24    any person that timely and properly excludes himself or herself from the Class in accordance with

25    Court-approved procedures.

26       131.    Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers,

27    and directors, those who purchased the Products for resale, all persons who make a timely election

28    to be excluded from the Class, the judge to whom the case is assigned and any immediate family

**CLASS ACTION COMPLAINT**

1   members thereof, and those who assert claims for personal injury.

2       132.    The members of the Class are so numerous that joinder of all Class Members is
3   impracticable.

4       133.    Defendant has sold the Product to no less than tens of thousands persons.

5       134.    The Class consists of thousands of persons, and joinder is impracticable.

6       135.    Common questions of law or fact predominate and include whether Defendant's
7   representations and omissions were and are misleading and if plaintiff and class members are
8   entitled to injunctive relief and damages.

9       136.    Plaintiff's claims and his basis for relief are typical to other members because all
10  were subjected to the same unfair and deceptive representations and omissions with respect to the
11  Product's water-resistance capabilities.

12      137.    Plaintiff sustained damages from Defendant's wrongful conduct, of the precise type
13  Defendant promised he would not.

14      138.    The website postings show that Class Members experienced similar types of
15  damage to what Defendant promised the Product would withstand.

16      139.    Plaintiff will fairly and adequately protect the interests of the Class and has retained
17  counsel that is experienced in litigating complex class actions.

18      140.    Plaintiff has no interests which conflict with those of the Class.

19      141.    No individual inquiry is necessary since the focus is only on Defendant's practices
20  and the class is definable and ascertainable.

21      142.    Plaintiff anticipates this Court can direct notice to Class Members, by publication
22  in major media outlets and the Internet.

23      143.    A class action is superior to other available methods for adjudication of this
24  controversy, since individual actions would risk inconsistent results, be repetitive and are
25  impractical to justify, as the claims are modest relative to the scope of the harm.

26      144.    The prerequisites to maintaining a class action for equitable relief are met as
27  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making
28  appropriate equitable relief with respect to the Class as a whole.

**FIRST CLAIM**
**Violation of Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 et seq.**

145.    Plaintiff incorporates all preceding paragraphs.

146.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, et seq. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

147.    Defendant's knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

148.    Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant made materially false representations and omissions.

149.    Defendant made representations that the Product was water resistant when the Product was not water resistant.

150.    Defendant is aware that the representations and omissions they have made about the Product were and continue to be false and misleading.

151.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the marketing and advertising of the Products.

152.    Additionally, when consumers submit the devices for repair under the Defendant's warranty program, Defendant denies coverage, and then attempts to get consumers to pay a repair price in excess of the retail price as set by Defendant.

153.    There were reasonable alternatives available to Defendant to further its legitimate business interests, other than the conduct described herein.

154.    Defendant's misrepresentations of material facts also constitute an "unlawful" practice because they violate the laws and regulations cited herein, as well as the common law.

155.    Defendant's conduct in making the representations and omissions constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, all of which are binding upon and burdensome to their competitors.

156.    This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

157.    Defendant's conduct was, and continues to be, unfair in that its injury to countless purchasers of the Product is substantial and is not outweighed by any countervailing benefits to consumers or to competitors.

158.    Moreover, Plaintiff and members of the Class could not have reasonably avoided such injury.

159.    Defendant's material misrepresentations and omissions regarding the Product were likely to deceive, and Defendant knew or should have known that its misrepresentations and omissions were untrue and misleading.

160.    Plaintiff purchased the Product in reliance on the representations made by Defendant, including that the representations were accurate, and without knowledge of Defendant's misrepresentations and omissions.

161.    Plaintiff and Class Members have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Product, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception to the detriment of consumers.

162.    As a result of these business acts and practices, Plaintiff and members of the Class, pursuant to § 17203, are entitled to an Order enjoining Defendant's future wrongful conduct and such other Orders and judgments that may be necessary to disgorge any ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct.

163.    Pursuant to Civil Code § 3287(a), Plaintiff and the members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct.

164.    The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the class members are entitled to interest in an amount according to

proof.

## SECOND CLAIM
### Violations of the False Advertising Law,
### Cal. Bus. & Prof. Code §§ 17500 et seq.

165.    Plaintiff incorporates all preceding paragraphs.

166.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

167.    Defendant committed acts of false advertising, as defined by §§ 17500, et seq., by misrepresenting that the Product had water resistant capabilities.

168.    Defendant knew or should have known through the exercise of reasonable care that these representations and other misrepresentations for the Product were false, misleading and/or deceptive.

169.    Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

170.    Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the capabilities of its Products.

171.    Consumers, including Plaintiffs and members of the Class, were among the intended targets of such representations.

172.    As a result of Defendant's conduct, Plaintiffs and members of the Class were harmed and suffered actual damages as a result of Defendant's FAL violations because

a.  they would not have purchased the Products on the same terms if they knew that the Products did not offer water resistant capabilities as represented;

b.  they paid a price premium for the Products based on Defendant's misrepresentations; and

c.  the Product does not have the characteristics, attributes, features, uses, benefits, or abilities as promised, namely the represented water resistant capabilities.

173.  Plaintiffs and members of the Class have been damaged in the full amount of the purchase price of the Product or in the difference in value between the Product as warranted and the Product as actually sold.

174.  Defendant has been unjustly enriched at the expense of Plaintiffs and Class Members.

### THIRD CLAIM
### Violations of the Consumer Legal Remedies Act,
### Cal. Civ. Code §§ 1750 et seq.

175.  Plaintiff incorporates all preceding paragraphs.

176.  At all times relevant, Plaintiff and Class Members were "consumer[s]," as defined in Civil Code section 1761(d).

177.  At all times relevant, Defendant constituted a "person," as defined in Civil Code section 1761(c).

178.  At all times relevant, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in Civil Code section 1761(a).

179.  The purchase of the Product by Plaintiff and Class Members were and are "transactions" within the meaning of Civil Code section 1761(e).

180.  Defendant's representations and omissions concerning the quality, attributes, features, benefits and effectiveness of the Product were false and/or misleading as alleged herein.

181.  Defendant's false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in deciding to purchase the Product.

182.  Defendant's false and misleading representations and omissions were made to Plaintiff and Class Members, as they were prominently displayed and featured throughout the

advertising and marketing of the Product, in digital, print, and television media.

183.    Defendant knew or should have known its representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Class.

184.    Defendant's practices, acts, and course of conduct in marketing and selling the Product were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to their detriment.

185.    Defendant's false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

> d.  In violation of Civil Code § 1770(a)(5), Defendant represented that the Product had characteristics, attributes, features, capabilities, uses, benefits, and qualities it does not have;
>
> e.  In violation of Civil Code § 1770(a)(7), Defendant represented that the Product was of a particular standard, quality, or grade, which it is not;
>
> f.  In violation of Civil Code § 1770(a)(9), Defendant advertised the Product with an intent not to sell the Product as advertised; and
>
> g.  In violation of Civil Code § 1770(a)(16), Defendant represented the subject of the transaction – the Product – had been supplied in accordance with its previous representations, when it was not.

186.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised the Product to unwary consumers.

187.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

188.    Defendant's wrongful business practices were a direct and proximate cause of

27

1   actual harm to Plaintiff and to each Class Member.

2        189.    If Defendant is not restrained from engaging in these types of practices in the

3   future, Plaintiff and class members will continue to suffer harm.

4        190.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a CLRA

5   Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details

6   and includes these violations of the CLRA, demand correction of these violations, and provide the

7   opportunity to correct these business practices.

8        191.    If Defendant does not correct these business practices, Plaintiff will amend or seek

9   leave to amend the Complaint to add claims for monetary relief, including restitution and actual

10  damages under the CLRA.

11       192.    If Defendant does not correct these business practices, Plaintiff will request

12  injunctive relief and ask that this Court enjoin Defendant from continuing to employ the unlawful

13  methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780.

14  **FOURTH CLAIM**
15  **Breach of Express Warranties**

16       193.    Plaintiff incorporates all preceding paragraphs.

17       194.    Defendant promised and expressly warranted that the Products had water resistant

18  capabilities.

19       195.    Plaintiff and Class Members relied on these representations when purchasing the

20  Product.

21       196.    These promises and affirmations of fact constitute express warranties that became

22  part of the basis of the bargain between Plaintiff, Class Members, and the Defendant.

23       197.    All conditions precedent to Defendant's liability under the contract, including

24  notice, have been performed by Plaintiff and Class Members.

25       198.    Defendant has breached the terms of its express warranties by failing to provide the

26  Product as warranted.

27       199.    Plaintiff and Class Members used the Product in a manner consistent with its

28  operating instructions and Defendant's representations.

200.     Plaintiff and Class Members performed their duties under the terms of the express warranties or have been excused from such performance as a result of Defendant's conduct.

201.     Any attempt by Defendant to disclaim or limit its express warranties vis-à-vis Plaintiff and Class Members would be unconscionable and unenforceable, because Defendant knowingly sold a defective product without informing consumers and because Defendant failed to honor its express promises.

202.     As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff and Class Members have suffered economic damages, including costly repairs, loss of use, replacement costs, substantial loss in value and resale value of the Product, and other harm.

**FIFTH CLAIM**
**Violation of the Magnusson-Moss Warranty Act,**
**15 U.S.C. §§ 2301 et seq. ("MMWA")**

203.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

204.     Plaintiff and Class Members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

205.     The Product is a "consumer product[s]" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

206.     Defendant is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

207.     Defendant's express warranties are written warranties within the meaning of 15 U.S.C. § 2301(6).

208.     The Product's implied warranties are accounted for under 15 U.S.C. § 2301(7).

209.     Defendant cannot disclaim implied warranties under the MMWA because it knowingly sold a defective product without informing consumers about the defects.

210.     As set forth herein, Defendant breached its warranties with Plaintiff and Class Members.

211.     The Products share common defects in that they are unable to provide water

**CLASS ACTION COMPLAINT**

1    resistant capabilities consistent with Defendant's advertising claims.

2    212.   Prior to the filing of this Complaint, Plaintiff notified Defendant of the defects

3    described herein.

4    213.   Defendant did not replace or repair the defective Product for Plaintiff and Class

5    Members.

6    214.   Instead, the costs of the defects were borne by Plaintiff and Class Members.

7    215.   As a direct and proximate result of Defendant's breach of implied and express

8    warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and Class Members have suffered

9    damages in an amount to be proven at trial.

10   216.   The amount in controversy for the Plaintiff's and Class Members' individual claims

11   meets or exceeds the sum of $25.

12   217.   The total amount in controversy of this action in sum exceeds $50,000, exclusive of

13   interest and costs, computed on the basis of all claims to be determined in this lawsuit.

14   218.   Plaintiff and Class Members are entitled to recover damages as a result of

15   Defendant's breach of warranties.

16   219.   Plaintiff and Class Members are also entitled to seek costs and expenses, including

17   attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

18
### SIXTH CLAIM
**Breach of Implied Warranty of Merchantability
and Fitness for a Particular Purpose**
19

20   220.   Plaintiff repeats and realleges each and every allegation contained in the foregoing

21   paragraphs as if fully set forth herein.

22   221.   Defendant is a "merchant" as defined under the UCC.

23   222.   The Product are "goods" as defined under the UCC.

24   223.   Defendant engaged in a focused marketing campaign to consumers concerned

25   about water damaging their smart watches and has reason to know that Plaintiff and Class

26   Members purchased the Product for a particular purpose, e.g., to be used in and around water and

27   during water activities.

28   224.   Plaintiff and Class Members relied on Defendant's skill or judgment to furnish

devices that accomplished that purpose and others.

225.   Defendant breached the implied warranty of fitness because the Product was incapable of satisfying that purpose, among others, due to the defects and other conditions as alleged above.

226.   Plaintiff was harmed by Defendant's breach of the implied warranty of fitness by, inter alia, overpaying for the Product.

227.   Plaintiff and Class Members' interactions with Defendant suffice to create privity of contract between Plaintiff and Class Members, on the one hand, and Defendant, on the other hand.

228.   Plaintiff and Class Members are intended third party beneficiaries of contracts (including implied warranties) between Defendant and the distributors and retailers who sell the Product.

229.   Defendant's warranties were designed for the benefit of consumers who purchased the Product.

230.   As a direct and proximate result of the breach of said warranties, Plaintiff and Class Members were injured and are entitled to damages.

231.   Defendant's attempts to disclaim or limit the implied warranties of fitness and merchantability vis-à-vis consumers are unconscionable and unenforceable.

232.   Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the defects.

233.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class.

234.   Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant.

235.   A gross disparity in bargaining power existed between Defendant and Class members, as only Defendant knew or should have known that the Product was defective at the time of sale and that the device was not of merchantable quality.

236.   Plaintiff and Class Members have complied with all obligations under the warranty

**CLASS ACTION COMPLAINT**

1  or otherwise have been excused from performance of said obligations as a result of Defendant's

2  conduct described herein.

3      237.    Defendant was provided notice of these issues by Plaintiff, and complaints lodged

4  by consumers before or within a reasonable amount of time after the allegations of the defects

5  became public.

6      238.    Prior to the filing of this Complaint, Plaintiff informed Defendant of his experience

7  with the Product and/or Defendant was aware of his experience concerning the defects alleged.

8                    **SEVENTH CLAIM**
                     **Unjust Enrichment**
9

10     239.    Plaintiff repeats and realleges each and every factual allegation contained in the

11 foregoing paragraphs as if fully set forth herein.

12     240.    Plaintiff brings this claim individually and on behalf of the members of the

13 proposed Class against the Defendant.

14     241.    At all times relevant hereto, Defendant deceptively marketed, advertised, and sold

15 merchandise to Plaintiff and the Class.

16     242.    The Product purchased by Plaintiff and the Class Members did not provide the

17 promised performance and instead contained uniform defects.

18     243.    Plaintiff and Class Members conferred upon Defendant non-gratuitous payments

19 for the Product that they would not have if not for Defendant's deceptive advertising and

20 marketing.

21     244.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff

22 and Class Members, with full knowledge and awareness that, as a result of Defendant's deception,

23 Plaintiff and Class members were not receiving a product of the quality, nature, fitness, or value

24 that had been represented by Defendant and that reasonable consumers would have expected.

25     245.    At the time of Plaintiff and Class Members' purchases, Defendant knew of the

26 Product's defects and true efficacy.

27     246.    Knowing that their representations were false, Defendant sold the Product to

28 Plaintiff and Class Members at a premium price.

247.    Accordingly, Defendant continues to retain a benefit improperly obtained to the detriment of Plaintiff and Class Members.

248.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Product.

249.    Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Product.

250.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for its unjust enrichment, as ordered by the Court.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all causes of action so triable.

WHEREFORE, Plaintiff, on behalf of himself and Members of the Proposed Class, prays for judgment and relief on all of the legal claims as follows:

A.    Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged herein;

C.    For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and Cal Civ. Code § 1780, except for monetary damages under the CLRA;

D.    For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq.;

E.    For damages, declaratory and injunctive relief pursuant to California Civil Code § 1780, except for monetary damages under the CLRA;

F.    An award of compensatory damages, the amount of which is to be determined at trial, except for monetary damages under the CLRA;

G.    For punitive damages;

H.    For interest at the legal rate on the foregoing sums;

I.    For attorneys' fees;

**CLASS ACTION COMPLAINT**

1      J.      For costs of suit incurred; and

2      K.      For such further relief as this Court may deem just and proper.

3

4   Dated:   March 4, 2022

                                    Respectfully submitted,

5
                                    /s/   Craig Borison

6
                                    Craig Borison (SBN: 248387)
7                                   BORISON LAW
                                    468 North Camden Drive
8                                   Ste 200-90416
                                    Beverly Hills, CA 90210
9                                   Telephone: (818) 256-5449
                                    craig@borisonlaw.com
10

11
                                    Steffan T. Keeton (Pro Hac Vice forthcoming)
12                                  The Keeton Firm LLC
                                    100 S Commons Ste 102
13                                  Pittsburgh, PA 15212
                                    Telephone: (888) 412-5291
14                                  stkeeton@keetonfirm.com

15

16
                                    Spencer Sheehan (Pro Hac Vice forthcoming)
17                                  Sheehan & Associates, P.C.
                                    60 Cuttermill Rd Ste 412
18                                  Great Neck, NY 11021
                                    Telephone: (516) 268-7080
19                                  Facsimile:  (516) 234-7800
                                    spencer@spencersheehan.com
20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**